## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| LEISHA ANN SLONE,                )   | |
|                                   )   | |
|     **Plaintiff,**            )   | |
|                                   )   | |
| **v.**                            )   | **CAUSE NO. 1:17-cv-00452-SLC** |
|                                   )   | |
| **COMMISSIONER OF SOCIAL**        )   | |
| **SECURITY,** *sued as Nancy A. Berryhill,* ) | |
| *Commissioner of Social Security,* )  | |
|                                   )   | |
|     **Defendant.**            )   | |

## OPINION AND ORDER

Plaintiff Leisha Ann Slone appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[1]  (DE 1).  For the following reasons, the Commissioner's decision will be AFFIRMED.

## I.  FACTUAL AND PROCEDURAL HISTORY

Slone applied for DIB in October 2014, alleging disability as of September 15, 2013. (DE 12 Administrative Record ("AR") 12, 153-54).  Slone was last insured for DIB on December 31, 2013 (AR 12, 72), and therefore, she must establish that she was disabled as of that date.  *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB benefits).

The Commissioner denied Slone's application initially and upon reconsideration.  (AR

---

[1] All parties have consented to the Magistrate Judge.  (DE 15); *see* 28 U.S.C. § 636(c).

82-98). After a timely request, a hearing was held on August 19, 2016, before Administrative Law Judge Terry Miller (the "ALJ"), at which Slone, who was represented by counsel, and Amy Kushpa, a vocational expert (the "VE"), testified. (AR 30-66, 99-100). On December 21, 2016, the ALJ rendered an unfavorable decision to Slone, concluding that she was not disabled because despite the limitations caused by her impairments, she could perform a significant number of unskilled, light exertional jobs in the economy. (AR 12-25). Slone's request for review was denied by the Appeals Council (AR 1-11), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Slone filed a complaint with this Court on October 30, 2017, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Slone alleges that the ALJ erred at step five by relying on the VE's testimony without properly addressing Slone's objections and rebuttal evidence. (DE 16 at 4-16).

As of her date last insured, Slone was 53 years old (AR 153), had a ninth grade education (AR 179), and had work experience as a cashier, a cook, and at a deli counter (AR 179). In her DIB application, Slone alleges disability due to: rheumatoid arthritis, anxiety, mitral valve prolapse, chronic obstructive pulmonary disease, and depression. (AR 178).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### *A. The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is

currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On December 21, 2016, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 12-25). At step one, the ALJ concluded that Slone had not engaged in substantial gainful activity after her alleged onset date of September 15, 2013, through her date last insured, December 31, 2013. (AR 14). At step two, the ALJ found that Slone had the following severe impairments as of her date last insured: history of paroxysmal atrial tachycardia and mitral valve prolapse, acute coronary syndrome, history of tobacco abuse, arthritis of the joints and chronic pain, history of depression and generalized anxiety, and attention deficit hyperactivity disorder. (AR 14). At step three, the ALJ concluded that Slone

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

did not have an impairment or combination of impairments severe enough to meet or equal a

listing.  (AR 15).

Before proceeding to step four, the ALJ determined that Slone's symptom testimony was

not entirely consistent with the medical evidence and other evidence of record (AR 19), and the

ALJ then assigned Slone the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to
> perform light work as defined in 20 CFR 404.1567(b) (i.e. lift,
> carry, push, pull twenty pounds occasionally, and ten pounds
> frequently; sit, as well as stand and walk in combination, at least
> six out of eight hours in an eight-hour workday), with the
> following additional limitations:  never climb ladders, ropes or
> scaffolds; only occasional climbing of ramps and stairs, balancing,
> stooping, kneeling, crouching and crawling; avoid concentrated
> exposure to pulmonary irritants including fumes, odors, dust,
> gases, poorly ventilated areas and chemicals; limited to
> understanding, remembering and carrying out simple, routine,
> repetitive tasks consistent with unskilled work, defined as
> occupations that can be fully learned within a short period of time
> of no more than thirty days, and requires little or no judgment to
> perform simple tasks, with the ability to sustain those tasks
> throughout the eight-hour workday without frequent redirection to
> task; no fast paced work or work requiring a regimented pace of
> production; and only occasional interaction with others including
> supervisors, coworkers and the general public.

(AR 18).

Based on the assigned RFC and the VE's testimony, the ALJ found at step four that Slone

was unable to perform any of her past relevant work as of her date last insured.  (AR 21).  At

step five, however, the ALJ found that as of her date last insured Slone could perform a

significant number of other unskilled, light jobs in the economy, including repack room worker,

stock checker, and office helper.  (AR 22).  Therefore, Slone's application for DIB was denied.

(AR 24-25).

*C. The ALJ's Step-Five Determination*

Slone argues that the ALJ erred at step five by failing to properly address her post-hearing objections and rebuttal evidence relating to the VE's testimony. More particularly, Slone contends that the ALJ erred by failing to specifically acknowledge and discuss the report of Paula Santagati, a vocational rehabilitation counselor. Additionally, Slone contends that the ALJ failed to appropriately address her objection pertaining to the VE's reliance on the Dictionary of Occupational Titles ("DOT"), which Slone asserts is an obsolete resource. The Court will address each of these arguments in turn.

1.   <u>Ms. Santagati's Report</u>

At the hearing on August 19, 2016, the ALJ asked the VE whether an individual of Slone's age, education, work history, and RFC could perform any unskilled, light jobs in the economy. (AR 61-62). The VE responded affirmatively and identified the following representative examples: repack worker, Dictionary of Occupational Title ("DOT") code no. 920.687-146, with 320,000 jobs; stock checker, DOT code no. 299.667-014, with 24,000 jobs; and office helper, DOT code no. 239.567-010, with 50,000 jobs. (AR 62). The VE testified that these jobs were consistent with the descriptions in the DOT and the SCO,[3] with the exception of the sit-to-stand option, which was based on the VE's own experience in observing these positions. (AR 63).

Upon cross-examination, Slone's attorney asked the VE what sources she had used to obtain these numbers. (AR 64). The VE responded that she had used "federally published

---

[3] The SCO is the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, which like the DOT, is published by the Department of Labor. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

information" and the SkillTran Job Browser pro software program.  (AR 65).  Slone's attorney

then asked whether the jobs identified by the VE were ones that she was familiar with through

her professional experience; the VE responded affirmatively.  (AR 65).  Slone's attorney asked

no further questions.  (AR 64).  The hearing then closed, with the ALJ stating that he would keep

the record open for another 15 days for the submission of additional medical records and a post-

hearing brief.  (AR 65).

On August 30, 2016, Slone's attorney submitted an eight-page post-hearing

memorandum that raised six objections to the VE's testimony and attached 41 pages of exhibits.

(AR 230-70).  Among the exhibits was a two-page document entitled, "Vocational Opinion

Regarding the Limitation of Occasional Interaction With Coworkers and Supervisors" penned by

Paula F. Santagati, a Senior Vocational Rehabilitation Counselor, dated October 1, 2015.[4]  (AR

268-69).  Ms. Santagati's opinion, which predates the hearing by almost a year, asserts that any

claimant who is limited to occasional interaction with supervisors, co-workers, and the public

would be disabled because all jobs require an initial training and probationary period that would

require more than occasional interaction with others.  (AR 268-69).

As stated earlier, Slone contends that the ALJ erred by failing to specifically

acknowledge and discuss Ms. Santagati's report, emphasizing that an ALJ "must confront the

evidence that does not support his conclusion and explain why it was rejected."  (DE 16 at 5

(quoting *Thomas v. Colvin*, 534 F. App'x 546, 550 (7th Cir. 2013))).  Slone asserts that Ms.

Santagati's opinion directly conflicts with the VE's testimony, which represented that Slone

could perform the jobs of repack room worker, stock checker, and officer helper despite her

---

[4] Ms. Santagati's single-page *curriculum vitae* was also included in the exhibit.  (AR 270).

limitation to "only occasional interaction with others including supervisors, coworkers and the general public." (AR 18).

Slone's argument is unpersuasive for a number of reasons. First, Ms. Santagati's opinion is not specific to Slone, does not mention her by name, was drafted almost a year before the hearing, and "appears to be a form opinion to be used in all cases where any plaintiff has this type of limitation." *Treadaway v. Berryhill*, No. 4:17-cv-1093, 2018 WL 3862106, at *5 (S.D. Tex. Aug. 13, 2018) (rejecting the claimant's argument that centered on the post-hearing submission of a generic opinion letter from Ms. Santagati); *see also Looney v. Berryhill*, No. 3:17cv450 (DJN), 2018 WL 3826778, at *12 (E.D. Va. Aug. 9, 2018) (same); *Collins v. Berryhill*, No. 3:17cv633 (MHL), 2018 WL 4232888, at *8-9 (E.D. Va. Aug. 17, 2018) (same); *Reeves v. Berryhill*, No. 3:16-CV-2510, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017) (same). In her opinion, Ms. Santagati reviews several entry-level positions—a cashier, dishwasher, factory worker, and cleaning person—that would require extensive interaction with others during the training period. (AR 268-69). However, *none* of these jobs are the ones that the VE testified Slone could perform; that is, Ms. Santagati's opinion does not discuss the interactions expected of a repack room worker, a stock checker, or an office helper. *See Treadaway*, 2018 WL 3862106, at *5.

Reading Ms. Santagati's opinion generously, "[a]t best, the ALJ was faced with conflicting opinions from two vocational experts and found [the VE's] opinion to be more compelling." *Id*. Courts "do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869 (citations omitted). "Conflicts in the evidence are for the Commissioner to resolve."

*Treadaway*, 2018 WL 3862106, at *5 (citation omitted).  The Court will not accept Slone's invitation to reweigh the vocational expert evidence at this juncture.

Second, contrary to Slone's assertion, the ALJ sufficiently addressed the objections and evidence that Slone submitted in her post-hearing memorandum.  *See Johnson v. Berryhill*, No. 17-CV-6436P, 2018 WL 4275985, at *10 (W.D.N.Y. Sept. 7, 2018) ("[A] plain reading of the ALJ's decision demonstrates that the ALJ did not fail[] entirely to respond to [p]laintiff's post-hearing objections." (alterations in original) (citation and internal quotation marks omitted)).  The ALJ penned two full pages on Slone's post-hearing memorandum and objections.  (AR 22-24).  In doing so, the ALJ pointed out that Slone "had the opportunity to submit evidence subsequent to the hearing."  (AR 24).

The ALJ also cited in his decision a portion of Slone's 41 pages of exhibits, which indicates that the ALJ indeed reviewed the exhibits.  (AR 23 (citing to a letter dated February 12, 2014, contained within the exhibits)); *see Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *5 (E.D. Ky. June 19, 2018) (rejecting the claimant's argument that the ALJ had failed to consider Ms. Santagati's generic report where the ALJ "explicitly acknowledged and cited to the entire post-hearing memorandum"); *Looney*, 2018 WL 3826778, at *12 (finding that the ALJ had sufficiently explained his reliance on the VE's conclusions over the generic report of Ms. Santagati, even though the ALJ never mentioned Ms. Santagati's report in his decision).  Considering the generic nature of Ms. Santagati's opinion, and that it was dated almost a year before the hearing, the Court concludes that in this particular instance the ALJ's failure to specifically mention Ms. Santagati's two-page opinion does not constitute reversible error.  *See Treadaway*, 2018 WL 3862106, at *6 n.6 (characterizing the ALJ's failure to specifically discuss

Ms. Santagati's letter as harmless, given that the letter "is generic and does not provide evidence sufficient to rebut the testifying expert's opinion"); *Kidd*, 2018 WL 3040894, at *5 (rejecting the claimant's argument based on the post-hearing submission of Ms. Santagati's generic opinion, observing that "Santagati said utterly nothing about Kidd's life, health, ability to work, or case"); *Reeves*, 2017 WL 3433706, at *11 (concluding that the ALJ was not required to explain why she ignored Ms. Santagati's opinion).

In any event, as the ALJ emphasizes, Slone had an opportunity to cross examine the VE and present this evidence at the hearing. (AR 24, 64-65). Ms. Santagati's opinion was dated almost a year before the hearing, so it obviously was available to Slone's attorney at the time of the hearing.[5] Yet, Slone's attorney chose to ask the VE just three general questions—none which had anything to do with Slone's social limitations or the training period associated with the representative sample jobs. (AR 64-65). Furthermore, at the hearing Slone's attorney did not object to the VE's qualifications, the resources used by the VE, or the VE's methodology. (AR 64-65); *see Looney*, 2018 WL 3826778, at *12-13 (concluding that the claimant had waived his post-hearing objection based on Ms. Santagati's generic report by failing to present it at the hearing); *Kidd*, 2018 WL 3040894, at *4 ("The Santagati report and the DOT each existed at the time of the hearing, and Kidd could have presented the theories."). Had Slone's attorney actually questioned the VE's testimony on this topic at the hearing, the VE could have said more about the resources and her methodology. Claimants may forfeit arguments concerning vocational expert testimony by failing to object to the testimony during the hearing. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009); *Barrett v. Barnhart*, 355 F.3d 1065, 1067

_____

[5] Slone was represented by a different attorney at the time of the hearing. (AR 30).

(7th Cir. 2004).

For these reasons, the ALJ did not commit reversible error by rejecting Ms. Santagati's opinion or by declining to hold a supplemental hearing. *See, e.g.*, *Johnson*, 2018 WL 4275985, at *12 (collecting cases in which the ALJ's decision was affirmed and the claimant's arguments based on a post-hearing submission of Ms. Santagati's generic opinion were rejected); *Looney*, 2018 WL 3826778, at *12 (collecting cases and stating that "[s]everal courts have received reports from Santagati containing identical testimony regarding work-preclusive social limitations, and have rejected the testimony for its lack of specificity, expertise and knowledge of the case in question"); *Kidd*, 2018 WL 3040894, at *4 ("The ALJ had no duty to convene a second hearing to pepper the VE with questions [about Ms. Santagati's report] that Kidd could have raised initially." (citation omitted)). "No principle of administrative law  or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (citations omitted).

2. The VE's Reliance on the DOT

Slone also argues that the DOT is an obsolete resource in that it was last updated in 1986, and as such, the VE's testimony based on the DOT fails to constitute substantial evidence supporting the ALJ's step-five finding. (DE 16 at 9-16). Slone contends that more recent vocational evidence found in O*NET that was submitted with her post-hearing brief demonstrates that the jobs of repack room worker, office helper, and stock checker are no longer performed at the unskilled level. (AR 233).

The ALJ considered Slone's post-hearing objection to the VE's use of the DOT, but

overruled the objection, explaining as follows:

> The [VE] identified other work that exists in the national economy while appropriately considering the claimant's [RFC], age, education, and work experience. The [VE] cited representative occupations that the claimant could perform given these factors, and her testimony regarding the skill level of these occupations is consistent with the DOT. The regulations provide that the undersigned take administrative notice of "reliable job information" available from various publications, including the DOT (20 CFR 404.1566(d); see also SSR 00-4p). In contrast, the regulations do not direct an adjudicator to take notice of O*NET. The undersigned also accepts the [VE] testimony regarding the estimated number of jobs available for the occupations provided, as her testimony was based on her professional experience (20 CFR 404.1566; SSR 00-4p).

(AR 24).

The Seventh Circuit Court of Appeals has commented on several occasions that the DOT is indeed an outdated resource upon which to base job descriptions or estimates of the number of available jobs of a particular kind. *See Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015); *Hermann v. Colvin*, 772 F.3d 1110, 1112-13 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). Nevertheless, "the Court has not held that it was a *per se* error to rely on the DOT." *Boeck v. Berryhill*, No. 16-C-1003, 2017 WL 4357444, at *20 (E.D. Wis. Sept. 30, 2017) (finding no error in the ALJ's reliance on the DOT). One district court succinctly explained why it is not a *per se* error for a VE to rely on the DOT:

> Given the fact that the DOT remains first in the list of publications of job data of which the SSA has taken administrative notice, 20 C.F.R. § 404.1566(d)(1), this is not surprising. Holding that use of the DOT constitutes *per se* error would call into question all of the SSA adjudications in which the DOT plays a role. It would also run afoul of the rule requiring judicial deference to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations. While O*NET may be a better source of job data than the DOT, it is hard to see why reliance on the DOT could be

considered error in light of the SSA regulations.

*Id*. (citations and internal quotation marks omitted); *see also* SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.").

Notably, Slone does not point to any case in which the Seventh Circuit reversed the Commissioner's decision solely on the basis of the ALJ's reliance on the DOT. *See Ragland v. Berryhill*, No. 17-C-0730, 2018 WL 1757656, at *11 (E.D. Wis. Apr. 12, 2018) (collecting cases and observing that the district courts in the Seventh Circuit have consistently concluded that the Seventh Circuit's criticisms of the DOT are dicta and do not merit remand). As such, Slone fails to establish that the VE's reliance on the DOT warrants a remand of the ALJ's step-five determination.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Slone.

SO ORDERED.

Entered this 1st day of November 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge